UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 06-20976-CIV-MORENO

PLATYPUS WEAR, INC., a California corporation,

    Plaintiff,

vs.

CLARKE MODET & CO., INC., a Florida corporation; CLARKE, MODET AND COMPANY, S.L., a foreign corporation; et al.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT FERNANDO CALDAS PEREIRA Caldas SR'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant Fernando Caldas Pereira Caldas Sr.'s Motion to Dismiss **(D.E. No. 53)**, filed on **October 10, 2006**.

THE COURT has considered the motion, the response, the reply and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED. This Court does not have personal jurisdiction over Mr. Fernando Caldas Pereira Caldas Sr. Mr. Caldas Sr. is therefore dismissed from this lawsuit.

### I.  BACKGROUND

Plaintiff Platypus Wear, Inc. ("Platypus") claims ownership of several trademarks that have in common images depicting "bad boys" and "bad girls" (the "Trademarks"). Platypus alleges that representatives of Big Blue Ltda. ("Big Blue"), Horizonte Ltda. ("Horizonte") and the law firm

Clarke Modet & Company[1] conspired with Laurens Offner (the former president of Platypus) to fraudulently transfer the Trademarks to Big Blue and Horizonte.

Platypus filed this lawsuit seeking remedies for *inter alia* fraud, civil conspiracy to commit fraud and conversion. The remaining defendants in the lawsuit include (1) Clarke Modet & Company, Inc. (the Florida entity), (2) Clarke Modet & Co., S.L. (the Spanish entity), (3) Fernando Maria Agostinho Caldas Jr., (4) Roberto Silva Ramos, and (5) Fernando Caldas Pereira Caldas Sr.

A.     **The Alleged Conspiracy**

Platypus alleges that the conspiracy began in 2003 because of fears about two lawsuits. The first concerned the ownership of the Trademarks in Brazil. Horizonte licensed the Trademarks from Big Blue for use on energy drinks sold in Brazil. Platypus sued Big Blue in 2002 in Brazilian Federal Court claiming ownership of the Trademarks. Platypus ultimately won an injunction in July, 2003 preventing Big Blue from using the Trademarks. The injunction thus invalidated Horizonte's license to use the Trademarks.

The second lawsuit concerned who had authority to control Platypus. Laurens Offner was President of Platypus until 2003. Platypus shareholders sued in San Diego Superior Court to enjoin Laurens Offner from acting on behalf of Platypus claiming that he wrongfully usurped control from his alzheimer's stricken father. The San Diego Superior Court entered an order enjoining Laurens Offner from acting on behalf of Platypus on June 27, 2003 after a jury trial (the "San Diego Superior Court Injunction"). Laurens Offner's authority to act on behalf of Platypus ended on that same date.

---

[1] Clarke Modet & Company, S.L. is a law firm based in Spain with offices in, among other places, Brazil and Miami, Florida. The Miami, Florida office is organized as Clarke Modet & Co., Inc. All references to "Clarke Modet" in this Order refer to both the Brazil and Miami offices unless otherwise stated.

Platypus alleges that Laurens Offner conspired with Horizonte and Big Blue to steal the Trademarks. Laurens Offner allegedly participated in the conspiracy because of the San Diego Superior Court litigation challenging his position at Platypus. Horizonte and Big Blue allegedly participated in the conspiracy because those companies feared the outcome of the litigation challenging Big Blue's ownership of the Trademarks in Brazil.

Platypus contends that this conspiracy to steal the Trademarks culminated at a meeting in Miami that occurred on or about July 12, 2003 (the "Miami Meeting"). Laurens Offner met with Platypus' then-lawyer from Clarke Modet (Elisa Santucci), representatives from Horizonte, and representatives from Big Blue.[2] This meeting took place after the entry of the San Diego Superior Court injunction on June 27, 2003. Platypus alleges that the participants at the meeting executed four agreements that together provided that (a) Horizonte would transfer the Trademarks to Big Blue, (b) Big Blue would transfer certain of the Trademarks to Horizonte, (c) Big Blue would pay 50% of any income due Big Blue relating to the Trademarks to Laurens Offner, and (d) Laurens Offner would have veto authority over Horizonte's use of the Trademarks (collectively the "Miami Meeting Agreements"). Platypus alleges the Miami Meeting Agreements were fraudulent because Laurens Offner did not have authority to enter into the Miami Meeting Agreements (because of the San Diego Superior Court Injunction) and because the Agreements were backdated to a date prior to the entry of the San Diego Superior Court Injunction.

Platypus further alleges Laurens Offner, Elisa Santucci and Horizonte committed additional fraudulent acts including entering into a backdated Temporary Assignment Agreement in October,

---

[2]Platypus alleges that Laurens Offner (Platypus), Elisa Santucci (Clarke Modet), Marco Merhej (Big Blue) and Roberto Silva Ramos (Horizonte) attended the Miami Meeting. Platypus alleges that Fernando Maria Agostinho Pereira Caldas Jr. (Horizonte) attended by telephone.

2003 and misrepresenting the signature dates of the Miami Meeting Agreements to the United States Patent & Trademark Office, the Office for Harmonization in the Internal Market (the European Union trademark administration), and the trademark office in Japan.

**B.     Mr. Caldas Sr.**

Platypus includes Mr. Caldas Sr. as a defendant in this lawsuit. Mr. Caldas Sr. resides in Portugal. Mr. Caldas Sr. and his family own Faimger, S.A. ("Faimger"). Faimger in turn owns a majority interest in Horizonte. Mr. Caldas Sr.'s son, Fernando Maria Agostinho Pereira Caldas Jr., controls Horizonte. Platypus contends that Mr. Caldas Sr. participated in the conspiracy by exercising his ownership interest in Horizonte and by influencing the decisions of his son, Mr. Caldas Jr.

Mr. Caldas Sr. denies that he controls Horizonte. He also denies any participation in the alleged conspiracy. Mr. Caldas Sr. contends that his son, Mr. Caldas Jr., controls Horizonte with full authority to authorize material transactions (such as those in dispute in this lawsuit). Mr. Caldas Sr. challenged this Court's exercise of personal jurisdiction over him claiming that he has no personal or business interests in Florida. He also claims that he has traveled to Florida only once as a tourist about twenty years ago.

## II.   BURDEN OF PROOF

The plaintiff bears the burden of establishing a prima facie case of jurisdiction over a non-resident defendant. Delong v. Washington Mills, 840 F.2d 843, 845 (11th Cir. 1988). The district court must then construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. *Id*. The plaintiff then bears the burden of proving "by affidavit the bases upon which jurisdiction may be obtained" only if defendant

challenging the jurisdiction files "affidavits in support of his position." Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).

### III.  ANALYSIS

Platypus does not contend that Mr. Caldas Sr. has sufficient direct contacts with Florida for this Court to exercise personal jurisdiction over him. Platypus instead relies on a "co-conspirator theory" to authorize personal jurisdiction over Mr. Caldas Sr. Platypus contends Mr. Caldas Sr.'s participation in the conspiracy to steal the Trademarks with persons over whom this Court can exercise personal jurisdiction allows this Court to exercise jurisdiction over Mr. Caldas Sr.

**A.    The Co-Conspirator Theory**

Personal jurisdiction in a federal diversity action is governed by the state law standard of the state in which the federal court sits. Bloom v. A.H. Pong Co., 519 F.Supp. 1162, 1165 (S.D. Fla. 1981); Gordon v. John Deere Company, 466 F.2d 1200 (5th Cir. 1972). While constitutional considerations govern the reach of a long-arm statute, a state is not obliged to extend its jurisdiction to the full extent permitted by the Constitution, if it chooses not to do so. Perkins v. Benguet Consolidated Mining Company, 342 U.S. 437 (1952). Once a state has, however, provided for jurisdiction over nonresidents, the jurisdiction so imposed can extend no further than the statutory base provided for by the forum state. Barrett v. Browning Arms Company, 433 F.2d 141 (5th Cir. 1970). Thus, this decision will apply Florida law interpreting the Florida long-arm statute to determine whether this Court has jurisdiction over Mr. Caldas Sr.

Florida case law about the co-conspirator theory is scant and conflicting. Platypus cites two district court cases that apply the co-conspirator theory. In the first, Hasenfus v. Secord, 797 F. Supp. 958 (S.D. Fla. 1989), the Southern District of Florida denied a motion to dismiss for lack of

personal jurisdiction. The defendant who filed the motion did not have sufficient direct ties to Florida for the court to exercise personal jurisdiction over him. The Court nonetheless decided it had jurisdiction over the Defendant because of that Defendant's involvement in a conspiracy to deliver arms to Iran. The Hasenfus court applied a three part test:

> The "co-conspirator theory" permits a state to assert jurisdiction over a non-resident defendant who has no direct contacts with the state. Although the precise contours of this theory have never been defined, the theory basically permits a state to assert jurisdiction over a non-resident defendant if: (1) jurisdiction can, under the traditional tests discussed below, be asserted over a "resident defendant" (i.e. one with sufficient ties to the state); (2) the plaintiff can demonstrate the existence of a conspiracy in which the non-resident defendant and the resident defendant participated; and (3) an overt act in furtherance of the conspiracy took place in the state.

*Id.* at 961.

The second case, Robert D. Harley Company, Ltd. v. Shapiro, 2007 U.S. Dist. LEXIS 4693 (S.D.Fla. 2007), applied the same three part test discussed in Hasenfus. The Shapiro court held that it had jurisdiction over a company without direct contacts with Florida because of that company's involvement in a conspiracy.

The parties' briefs and this Court's research found no other cases applying the three part test first articulated in Hasenfus and later applied in Shapiro. Platypus cited an Eleventh Circuit case, however, that applies a five part test that is similar to, but not the same as, the Hasenfus test. In Posner v. Essex Insurance, Ltd., 178 F.3d 1209 (11th Cir. 1999), the Eleventh Circuit applied the following five part test:

> (1) the existence of an actionable conspiracy; (2) the defendant's membership in the conspiracy; (3) the occurrence of a substantial act or substantial effect in furtherance of the conspiracy in the forum state; (4) the defendant's actual or constructive knowledge of the act

> in the forum state or that the act outside the state would have an effect in the state; and (5) [the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.][3]

The *Posner* decision quotes and relies on a Florida Appellate decision in Execu-Tech Bus. Sys. v. New Oji Paper Co., 708 So.2d 599 (Fla. 4th DCA 1998).

The Florida Supreme court, however, reversed the Execu-Tech decision after the Eleventh Circuit decided Posner. *See* Execu-Tech Bus. Sys. v. New Oji Paper Company, 752 So.2d 582 (Fla. 2000). In Execu-Tech, a Florida plaintiff filed a class action against nine thermal facsimile paper manufacturers alleging that those companies conspired to fix prices for thermal paper in the United States. One of the defendants, New Oji Paper Company ("New Oji"), challenged personal jurisdiction because the company (which was headquartered in Japan) had no contacts with Florida. The Florida Supreme Court held that the Florida Court had jurisdiction over New Oji because New Oji participated in the conspiracy to fix prices with companies that sold product in Florida. The Execu-Tech court held that the acts of the conspiracy are imputed to individual co-conspirators for the purpose of determining personal jurisdiction. *Id*. The Supreme Court's Execu-Tech decision approved a Florida Appellate Court decision in Wilcox v. Stout, 637 So.2d 335 (Fla. 2d DCA 1994). The Wilcox decision explains:

> Where a civil conspiracy to commit tortious acts has been successfully alleged, and some of those acts are alleged to have been accomplished within the state of Florida, we have no hesitancy in applying the well-accepted rules applicable to the liability of co-conspirators in the criminal context. Those rules make every act and declaration of each

---

[3] This latter, bracketed part of the test is quoted from the Florida state court case, Execu-Tech Bus. Sys. v. New Oji Paper Co., 708 So.2d 599 (Fla. 4th DCA 1998). The passage as quoted in Posner reads, "(5) the conspiracy conduct's direct or foreseeable cause of the act or effect."

>member of the conspiracy the act and declaration of them all. Additionally, each conspirator is liable for and bound by the act and declaration of each and all of the conspirators done or made in furtherance of the conspiracy even if not present at the time.

*Id.* at 337.

This Court is not bound by the Eleventh Circuit's Posner decision because it applies Florida law that the Florida Supreme Court later reversed in the Execu-Tech decision. This Court is also not persuaded by the Hasenfus and Shapiro three part test because those decisions differ from the Florida Supreme Court holding in Execu-Tech and the Florida Appellate Court holding in Wilcox. This Court will follow the Execu-Tech and Wilcox decisions because those decisions represent Florida law. The burden therefore falls on Platypus to demonstrate that Mr. Caldas was part of the conspiracy. This Court can then exercise jurisdiction over Mr. Caldas if the contacts of the conspiracy (imputed to Mr. Caldas Sr.) constitute sufficient minimum contacts.

**B.      Evidence of Mr. Caldas Sr.'s Participation in the Conspiracy**

Platypus alleges that Mr. Caldas Sr. was party to the fraudulent scheme to transfer the Trademarks consummated at the Miami meeting. Notwithstanding that both parties agree that Mr. Caldas Sr. was not present at the Miami meeting, Platypus alleges that he was integrally involved in the affairs of Horizonte and, therefore, must have been involved in the conspiracy. Because the parties have disputed the fact about Mr. Caldas Sr.'s involvement in the conspiracy in competing declarations, the burden falls on Platypus to prove "by affidavit the bases upon which jurisdiction may be obtained." *See* Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989). Thus, Platypus must show that Mr. Caldas Sr. participated in the conspiracy.

-8-

### 1. The Evidence of Mr. Caldas Sr.'s Involvement in the Conspiracy

Platypus acknowledges that it does not have any direct evidence of Mr. Caldas Sr.'s involvement in the conspiracy. Both parties agree that Mr. Caldas Sr. was not physically or telephonically present at the Miami Meeting. Platypus does not dispute Mr. Caldas Sr.'s assertion that he has no official title at Horizonte. Platypus instead relies on five avenues of circumstantial evidence to tie Mr. Caldas Sr. to the conspiracy:

   a.   *Evidence of Mr. Caldas Sr.'s Control Over Horizonte.*

Platypus contends that Mr. Caldas Sr. must have been involved in the scheme to defraud because he exercised extensive control over Horizonte through his ownership stake in Faimger and his relationship to his son, Mr. Caldas Jr. Mr. Caldas Sr. disputes this contention and instead contends that his son, Mr. Caldas Jr., managed Horizonte with independent authority to negotiate and consummate material transactions on behalf of Horizonte without Mr. Caldas Sr.'s approval.

Platypus' evidence of Mr. Caldas Sr.'s control of Horizonte consists of statements by Robin Offner in a declaration. Robin Offner succeeded Laurens Offner as president of Platypus. First, Robin Offner testifies that Mr. Caldas Jr. told him that Mr. Caldas Sr. "participated in material decisions affecting Horizonte and that such decisions required Caldas Sr.'s approval" and that he was intimately involved in material aspects of Horizonte's business. *See* Mr. Robin Offner's Declaration at ¶ 51. Second, Robin Offner testifies that he has had extensive dealings with Mr. Caldas Sr. that made it clear to him that Mr. Caldas Sr. controlled Horizonte. *Id.* at ¶ 52. Third, Robin Offner states that Mr. Caldas Jr. could not concede negotiation points to Platypus without first obtaining the approval of Mr. Caldas Sr. *Id.* at ¶ 53-55. Fourth, Robin Offner testified that he sometimes negotiated directly with Mr. Caldas Sr. and that Mr. Caldas Sr. exercised authority to make decisions

on behalf of Horizonte without consultation or approval from anyone else. *Id*.

        b.      *An Email from a Horizonte Manager to Mr. Caldas Sr.*

Platypus cites an email dated October 26, 2005 from a Horizonte manager to Mr. Caldas Sr. and others. Platypus contends that the email "reflects a request by Horizonte manager Frederico Menano for approval to transfer the trademarks from Horizonte to [Platypus] and provides that Caldas Sr. would maintain custody of the trademark transfer document until such time as Caldas Sr. signs an agreement with" Platypus. *See* Platypus' Response at pg. 7; Platypus' Exhibit I. Even though this email was sent two years after the Miami Meeting, Platypus contends that it demonstrates Mr. Caldas Sr. involvement in the negotiation of the Trademark transfers. This email is in Portuguese. No translation was provided. This Court could not confirm the interpretation provided by Platypus (quoted above).

        c.      *An Email from Laurens Offner to Mr. Caldas Sr.*

Platypus asserts that an email sent by Laurens Offner indicates Mr. Caldas Sr.'s involvement in the backdating. Mr. Laurens sent the following email to many recipients on July 1, 2003, which was several days after the San Diego Superior Court entered the injunction against Laurens Offner:

> Assunto: IMPORTANT, DO NOT REPLY
> Please do not mail this address and do not reply to this e-mail. To get a hold of me call 858-484-6600. Please do not call just about this e-mail. Do call in a couple weeks for new e-mail address. Be wary of any new e-mails coming from this address without first talking to me in person. There may be other people using it. Please delete this email upon reciept. If you recieve this more than once I apologize, you may be on multiple lists. Laurens

*See* Exhibit H, pg. 41. The typos are in the original. Platypus further alleges that Mr. Caldas Sr., "followed Laurens' instructions [to delete the email] as this e-mail was conspicuously missing from

the documents produced by Caldas Sr." *See* Platypus' Response at pg. 8.

### d. *Meetings between Mr. Caldas Sr. and Laurens Offner*

Platypus alleges that Mr. Caldas Sr. met with Laurens Offner in Lisbon, Portugal to discuss the litigation against Big Blue and Horizonte's continued use of the Trademarks "because of the uncertainty surrounding the trademarks caused by [the] legal action between [Platypus] and Big Blue." *See* Platypus' Response at pg. 15. Platypus claims without citation that Mr. Caldas Sr. "voiced to [Platypus] that his approval was required for all material transactions." *Id.*

### e. *Meetings between Mr. Caldas Sr. and Robin Offner*

Platypus alleges that Mr. Caldas Sr. met with Robin Offner three times between December, 2005 and February, 2006. The first meeting took place in San Diego in December. During that meeting, Robin Offner presented Platypus' evidence of the fraudulent transfer of the Trademarks. Platypus alleges that Mr. Caldas Sr. asked Robin Offner to travel to Lisbon to present the evidence to Horizonte's partners. Platypus relies exclusively on Robin Offner's Declaration at paragraphs 60-63 as proof of these statements.

The second meeting took place in Lisbon in January, 2006. Platypus alleges that Mr. Caldas Sr. and Mr. Caldas Jr. admitted to Robin Offner that the fraud consummated at the Miami Meeting actually happened. Robin Offner's Declaration states at paragraph 65, "Caldas Sr. controlled the meeting in Lisbon. During the meeting, Caldas Sr. stated 'I am not going to tell you that these documents were not backdated, they were.'" Robin Offner claims that he began negotiations with Mr. Caldas Sr. for Horizonte to license the Trademarks from Platypus at that meeting. *See* Robin Offner's Declaration at ¶ 66.

Platypus alleges a third meeting between Robin Offner and Mr. Caldas Sr. This meeting

occurred in San Diego in February, 2006. The purpose of this meeting was to continue negotiations over licensing of the Trademarks to Horizonte. *Id.* at ¶ 67.

### 2. Conclusion

This Court concludes that this evidence is not sufficient to demonstrate Mr. Caldas Sr.'s involvement in the conspiracy for purposes of establishing personal jurisdiction over him. All of the events described in Mr. Robin Offner's declaration took place after the Miami Meeting. Mr. Laurens Offner's email to Mr. Caldas Sr. does not implicate Mr. Caldas Sr. in the conspiracy because it does not mention the conspiracy and Mr. Caldas Sr. was one of many recipients. This evidence may demonstrate Mr. Caldas Sr.'s recent involvement in the management of Horizonte. It does not demonstrate his involvement during the time of the conspiracy. Even if Platypus established that Mr. Caldas Sr. exercised extensive control over Horizonte during the time period that the conspiracy occurred, Platypus presented no evidence that Mr. Caldas Sr. participated in the conspiracy.

### C. Corporate Shield Doctrine

This Court cannot exercise jurisdiction over Mr. Caldas Sr. for a second reason. Mr. Caldas Sr. cites cases that hold that acts taken by a corporate employee or agent on behalf of a corporation within a jurisdiction cannot form the basis for personal jurisdiction over the corporate employee or agent in his individual capacity. *See* Doe v. Thompson, 620 So.2d 1004 (Fla. 1993) (court had no jurisdiction over corporate officer sued for gross negligent when the officer's only contacts with Florida were his acts on behalf of the corporation); Bloom v. A.H. Pond Co., 519 F.Supp. 1162 (S.D. Fla. 1981) (jurisdiction inappropriate over corporate officers who had no personal contacts to Florida even where the corporation had sufficient contacts with Florida for personal jurisdiction).

Both sides agree that Mr. Caldas' Sr.'s only relevant contacts with the state of Florida are due

to his actions on behalf of Horizonte. Platypus has sued Mr. Caldas Sr. in his personal capacity. The complaint alleges that Mr. Caldas Sr. acted as a partner and agent of Horizonte. *See* Amended Complaint ¶¶ 6 and 145. Horizonte is not named in this lawsuit. This Court cannot consider any of Mr. Caldas Sr.'s contacts with Florida resulting from his acts as an agent of Horizonte. This Court therefore cannot exercise personal jurisdiction over Mr. Caldas Sr. because Platypus has not demonstrated nor alleged any contacts with Florida other than those alleged actions taken by Mr. Caldas Sr. on behalf of Horizonte.

### IV.   CONCLUSION

Platypus has not met its burden of demonstrating Mr. Caldas Sr.'s minimum contacts with Florida. This Court does not have jurisdiction over Mr. Caldas Sr. Mr. Caldas Sr. is therefore dismissed from this lawsuit. This Order does not decide the venue, *forum non conveniens* and failure to state cognizable claims arguments in Mr. Caldas Sr.'s Motion to Dismiss.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of September, 2007.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record