## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 06-20976-CIV-MORENO/SIMONTON

**PLATYPUS WEAR, INC.**

       **Plaintiff,**

**v.**

**CLARKE MODET & CO., INC., et al.,**

       **Defendants.**

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS AND
### GRANTING PLAINTIFF'S MOTION TO COMPEL INTERROGATORY RESPONSES

       Presently pending before this Court are the following discovery motions, which have been referred to the undersigned Magistrate Judge by the Honorable Federico A. Moreno, Chief United States District Judge (DE # 281):

    1.    Plaintiff's Motion to Compel Production of Documents Against Defendants Clarke Modet and Company, S.L. and Clarke Modet & Co, Inc. ("Motion to Compel Production") (DE # 249);[1] and

    2.    Plaintiff's Motion to Compel Answers to Interrogatories Against Defendants Clarke Modet and Company, S.L. and Clarke Modet & Co., Inc. ("Motion to Compel Interrogatory Responses") (DE # 267).[2]

After a review of the record, and for the reasons stated herein, Plaintiff's Motion to Compel Production is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion to Compel Interrogatory Responses is **GRANTED**.

---

      [1]    Clarke Modet and Company, S.L. filed a response (DE # 253), to which Plaintiff replied (DE # 272).  Clarke Modet & Co., Inc. filed separate response (DE # 264), to which Plaintiff replied (DE # 278).

      [2]    Defendants filed a joint response (DE # 289), to which Plaintiff replied (DE # 301).

I.      **BACKGROUND**

In its Amended Complaint, Plaintiff, Platypus Wear, Inc. ("Plaintiff," or "Platypus Wear"), has alleged that Laurens Offner ("Offner") illegally usurped control of Platypus Wear and managed the company until he was enjoined from acting on its behalf pursuant to a 2003 California State Court judgment against him.  (DE # 16 at 5).  In short, Plaintiff has alleged that Offner, through the participation and assistance of Platypus Wear's corporate counsel, wrongfully transferred Platypus Wear's trademark rights to other corporations, including Horizonte, Ltda. ("Horizonte") and Big Blue Comercio Ltda. ("Big Blue") (DE # 16 at 5-6).

According to Plaintiff's allegations, Platypus Wear's corporate interests during Offner's tenure were purportedly represented by Elisa Santucci, Esq., a partner of Clarke Modet and Company, S.L. ("Clarke, S.L."), "an international law firm" that owns and operates Clarke Modet & Co., Inc. ("Clarke, Inc.") (DE # 16 at 2 & 5).  Plaintiff claimed that Elisa Santucci, contrary to Plaintiff's interests, played a central role in facilitating Offner's scheme by back-dating settlement documents, assisting in the improper transfer of the trademark rights, and attempting to cover-up the wrongdoing.

Whereas Plaintiff – in its Amended Complaint and elsewhere – has described Clarke Modet, S.L. as a single law firm with offices in, among other places, Brazil and Florida (DE # 16 at 2), Defendants have maintained throughout these proceedings that Plaintiff has improperly grouped various Clarke Modet affiliates that are in fact independent and autonomous entities.  Thus, according to Defendants, Elisa Santucci was an employee of non-party Clarke Modet & Co. (Brazil) ("Clarke Brazil"), and she was neither employed by Clarke, S.L. nor Clarke, Inc. (DE # 262).  As it pertains to the instant discovery motions, Defendants argue that Elisa Santucci's employer, Clarke Brazil, lacks

2

any substantive partnership relationship with the either its corporate parent, Clarke, S.L.,

or its sister-subsidiary, Clarke, Inc., which is also owned by Clarke S.L. (DE # 289 at 2-3).

## II.   PLAINTIFF'S REQUESTS FOR PRODUCTION – IN GENERAL

### A.   Disputed Requests

On August 1, 2007, Plaintiff served its first request for production of documents

on Clarke, S.L. and Clarke, Inc.  The following requests are the subject of the instant

Motion to Compel Production (DE # 249):

- Request Nos. 2 and 3, which ask for all documents that "refer to, reflect or relate to legal services" provided by the Clarke Modet Entities to Horizonte and Big Blue, respectively;

- Request No. 4, which asks for all correspondence between Offner and any of the Clarke Modet Entities;

- Request No. 5, which asks for all documents relating to the Clarke Modet Entities' billing records for services performed in connection with a settlement between Platypus Wear and Big Blue;

- Request No. 6, which asks for all documents reflecting any instructions or recommendations by Offner to the Clarke Modet Entities regarding Platypus Wear's agreement to settle its lawsuit against Big Blue;

- Request No. 7, which asks for any retainer agreements between Elisa Santucci and Horizonte;

- Request Nos. 8-12 which ask for the production of Elisa Santucci's calendars, datebooks, timekeepers and day planners; documents relating to Ms. Santucci's visit to Miami, Florida between March 1, 2003 and September 1, 2003; Ms. Santucci's expense reports during that time; Ms. Santucci's employment and partnership agreements; and Ms. Santucci's personnel file;

- Request Nos 14-23, which ask documents relating to the hiring of various current and former employees of Clarke, Inc. and Clarke Brazil; as well as the current directors general of Clarke, Inc. and Clarke Brazil;

- Request No. 31, which asks for documents relating to the capitalization of Clarke Brazil;

3

- **Request No. 40, which asks for documents relating to Clarke Brazil's "right, authority or permission to use the 'Clarke Modet' name;"**

- **Request No. 43, which asks for corporate documents – such as bylaws and articles of incorporation – pertaining to Clarke, S.L., Clarke, Inc. and Clarke Brazil;[3]**

- **Request No. 52, which asks for all documents reflecting bills for services performed for Horizonte by any of the Clarke Modet Entities;**

- **Request No. 53, which asks for similar documents pertaining to services performed for Big Blue;**

- **Request No. 56, which asks for non-privileged correspondence between any of the Clarke Modet Entities and any non-party (including Horizonte) relating to the instant lawsuit or any of two similar lawsuits filed in Brazil and California;**

- **Request No. 58, which asks for correspondence between any of the Clarke Modet Entities and Fernando Caldas Pereira Caldas, Sr. regarding the instant lawsuit; and**

- **Request No. 59, which asks for correspondence between any of the Clarke Modet Entities and Horizonte regarding the instant lawsuit.**

B. <u>Abandoned Objections</u>

In reviewing Plaintiff's motion to compel, it is apparent that Defendants raised a number of arguments in its responses to Plaintiff's requests for production that it did not carry over into its responses to Plaintiff's motion to compel.  Because Defendants' responses to the motion to compel focused exclusively on (1) the purported separate legal identities of Clarke, S.L., Clarke, Inc. and Clarke Brazil; and (2) the applicability of the attorney-client and work product privileges, any other objections that Defendants asserted in responding to Plaintiff's discovery requests, but were not brought before this Court, are deemed waived.  Therefore, it is not necessary to decide the arguments

---

[3]      Clarke, Inc. has not objected to responding to Request No. 43, to the extent that it relates to those documents in its possession – which, naturally, pertain only to the corporate documents of Clarke, Inc., and neither Clarke, S.L. nor Clarke Brazil.

presented in the Motion to Compel, which addressed objections asserted in the discovery responses, but upon which Defendants did not rely in their responses; although, they are briefly discussed below.

In particular, Defendants abandoned their objections to that certain discovery requests were overbroad, burdensome, vague and/or harassing.  First, those unsubstantiated boilerplate objections that appear for the first time in its responses to Request Nos. 8-11 and are repeated throughout Defendants' responses to Plaintiff's discovery request[4] are, ironically, themselves overbroad and vague.  *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1992); *Cotracom Commodity Trading Co. v. Seaboard Corp*, 1998 U.S. Dist. LEXIS 6726, at *3-4 (D. Kans. 1998) ("[T]hese General Objections [are] worthless for anything beyond delay of discovery. . . .  These ostensible objections say nothing of consequence.  They do not constitute objections.").  And, even if Defendants had advanced particularized objections, with regard to Request Nos. 8-11 in particular, those objections would nevertheless be meritless.  The documents requested are limited to the time period which is relevant to Plaintiff's allegations that Ms. Santucci conspired to commit the acts that for the basis of Plaintiff's claims for relief.

Defendants also waived their objections relating to the production of confidential or private nature of certain employment records.  For instance, Clarke, S.L. initially responded to Plaintiff's request for production by arguing that Ms. Santucci's personnel file was irrelevant and burdensome because it would invade her privacy interests.

---

[4]     Defendants initially raised similar objections to Request Nos.14-23, 44-46, 49-50, 56, and 58-59, all of which were abandoned by their failure to raise them in their responses to Plaintiff's motion to compel.  The Court specifically finds that each of these discovery requests seeks relevant information.

Clarke, S.L., however, did not refute the argument Plaintiff raised in its motion to compel that the personnel file could be produced and any private portions thereof could be protected pursuant to the confidentiality stipulation and order entered in this case (DE # 133).  Notwithstanding Defendants' waiver of its objection, the Court finds that Ms. Santucci's personnel file is relevant and capable of production under the terms of the confidentiality stipulation and order.  *See Williams v. The Art Institute of Atlanta*, 2006 WL 3694649, at * 10 (N.D. Ga. 2006) (unpub. op.) (recognizing the "strong public policy against the public disclosure of personnel files," but permitting disclosure, pursuant to a protective order,  where an employee's "action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses") (internal citations and quotation marks omitted).

        Similarly, Defendants' objection to Request No. 31, which sought the production of documents pertaining to Clarke Brazil's capitalization, on the grounds that the request asked for "proprietary and/or financial information" is deemed abandoned.  The discovery is relevant, and although such information may be "proprietary" in nature, it nevertheless must be produced pursuant to the Confidentiality Order and Stipulation that governs this case.  *Pfeiffer v. K-Mart Corp.*, 106 F.R.D. 235 (S.D. Fla. 1985).

III.    **PLAINTIFF'S REQUESTS FOR PRODUCTION – CLARKE, S.L.'s OBJECTIONS**

        A.    **Possession and Control**

                1.    **The Parties' Positions**

        Both defendants' primary global objection to Plaintiff's requests to produce documents is simply that Clarke, S.L. and Clarke, Inc. are entities that are separate and distinct from Clarke Modet Brazil (and each other).  Therefore, any responsive documents that are in the physical possession of Clarke Brazil are not within

6

Defendants' "control," as the term is used in the Federal Rules and, therefore, Plaintiff's attempts to see those documents must be directed to Clarke Brazil by way of subpoena. *See* Fed. R. Civ. P. 45.  In short, Clarke, S.L. argues that it does not have physical possession over the responsive documents, and that it "cannot be legally required to produce documents which may be possessed by third parties," like Clarke Brazil, which are not under its control" (DE # 253 at 6 n.3).  According to Clarke, S.L., it is not required to produce any responsive documents that may be in Clarke Brazil's possession unless there is an "agency relationship" between the two entities, and that the stringent standard for finding the existence of an agency relationship requires proof that the parent corporation (Clarke, S.L.) exercises "operation control of the day-to-day business of the subsidiary," (Clarke Brazil) (DE # 253 at 8).[5]

Plaintiff argues that the definition of "control" in the Federal Rules is broader than Defendants admit, and that the close legal relationship between Clarke, S.L. and Clarke Brazil means that this Court may compel Clarke, S.L. to produce documents in Clarke Brazil's possession.  In other words, Clarke, S.L. is under a duty to produce any documents within its "control," including those documents that it has the legal right to obtain upon demand from its subsidiaries, including Clarke Brazil.

Plaintiff points out that , among other indicia of control, "Clarke, S.L. owns all the outstanding shares of Clarke [Brazil]."  In addition, Plaintiff asserts, Clarke, S.L.'s argument that it is a separate and distinct entity from Clarke Brazil is belied by the fact that Clarke S.L. has demonstrated the ability to obtain documents from its affiliates in the past, as well as certain representations that Clarke S.L. has made in its marketing

---

[5]     Clarke, S.L. also explains that the two entities perform different services and represent different clients in different countries (DE # 253 at 7).

and solicitation materials, on its Website, and in its displays at International Trademark Association meetings, which are suggestive of an agency relationship (DE # 272 at 2-5).

2.   Analysis

The undersigned begins with the well-settled proposition that "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).  There is scant authority from this Circuit, however, discussing whether documents in the possession of one corporate entity (Clarke Brazil) are to be considered "within the control" of its corporate parent (Clarke, S.L.).  Fortunately, other courts have addressed similar problems and offer some guidance.  Those courts have identified a number of factors, including (1) the corporate structure; (2) the connection of the entities to the transaction; and (3) and whether the entity resisting discovery would receive the benefit of a favorable outcome in litigation.  *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986).

Although Clarke, S.L. has maintained that it does not control the daily operations of Clarke Brazil (DE # 216, Ex. B at ¶ 12), it has not refuted Plaintiff's assertion that Clarke, S.L. owns Clarke Brazil in its entirety (DE # 288 at 7 n.2).[6]  Clarke, S.L. has not cited any case, and this Court has not found any case, in which a court has found that a parent corporation did not legally control the documents of its wholly-owned subsidiary for the purposes of responding to an otherwise valid discovery request.  *See American Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 375 (W.D.N.C. 1994) ("[A] litigating parent

---

[6]      To be precise, Clarke, S.L. only owns 1% of Clarke Brazil directly, while it owns the remaining 99% of Clarke Brazil indirectly through another wholly-owned subsidiary, Agence Generale de Marques et Brevets Soperfi (DE # 288 at 7 n.2).

corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is *wholly owned* or controlled by the parent.") (emphasis added).

Clarke, S.L.'s argument that it is necessary to demonstrate the existence of an agency relationship *in addition to* a parent-subsidiary relationship before finding that a corporate parent controls the documents of its subsidiary is misguided (DE # 253 at 7-8). The case on which Clarke, S.L. relies involved a request for documents from a subsidiary for documents within the control of its parent corporation, not vice versa, as in the instant case. *See Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438 (D.N.J. 1991). Thus, while an intracorporate relationship *and* additional indicia of control (such as an agency or alter-ego relationship) may be necessary for a subsidiary to reach up the corporate ladder and demand documents in its parent's possession, the same does not apply in the case of a parent corporation ordering its wholly-owned subsidiary to provide the documents it demands. In other words, Clarke, S.L.'s complete ownership of Clarke Brazil is sufficient to establish its legal right to control the documents of its subsidiary, without requiring additional proof of actual control might otherwise be necessary if the corporations were related to each other in a different way. *See Uniden America Corp. v. Ericsson, Inc.*, 181 F.R.D. 302, 305 (M.D.N.C. 1998) (citing cases).

Therefore, Clarke, S.L. is ordered to search for and produce all responsive documents possessed by Clarke Brazil.

B.      **Attorney-Client and Work-Product Privilege**

1.      **The Parties' Positions**

Clarke, S.L. has also advanced a brief argument related to the attorney-client and work-product privileges.  Clarke, S.L. begins by asserting that Plaintiff is not entitled to discover any documents shared between Clarke, S.L. and Clarke Brazil during the course of the litigation because proof that those corporations may be sharing legal expenses or participating in a joint defense is irrelevant because it "in no way establishes an agency relationship" between them (DE # 253 at 9).  That argument subtly morphs into a separate argument that any documents Clarke Brazil prepared and provided to Clarke, S.L. since the commencement of this lawsuit were generated "in anticipation of litigation and in furtherance of the rendition of legal services," and therefore "protected by both the attorney-client and work product privileges under Florida law" (DE # 253 at 10).

First, although the parties agree that federal law governs claims of privilege pursuant to the work product doctrine (DE # 253 at 10 n.4; DE # 272 at 8 n.3); *see also Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990), they take opposing positions regarding the law applicable to determine an attorney-client privilege.  Plaintiff argues that federal, not state, privilege law is the appropriate legal standard under which to evaluate whether discovery materials are subject to the attorney-client privilege in a federal lawsuit involving both federal and state causes of action (DE # 272 at 8 n.3).[7]  Defendants argue that state privilege law applies (DE # 253 at

---

[7]      The Court notes that *Pearson v. Miller* persuasively supports the notion of applying federal law to determine the applicability of the attorney-client privilege where, as in the instant case, the disputed evidence is arguably admissible to prove both state and federal claims asserted in the same litigation.  211 F.3d 57, 66 (3d Cir. 2000).

10 n.4).

Plaintiff also points out the inconsistency in Clarke, S.L.'s attempt to assert that Clarke Brazil is a distinct legal entity throughout the litigation, and then claim, in the context of discovery, that it was necessary for Clarke, S.L. to share attorney-client communications with Clarke Brazil, an unrelated corporate entity (DE # 272 at 8).  Finally, Plaintiff argues that documents gathered by Clarke, S.L. from non-party sources cannot be shielded from discovery under a claim of privilege simply because Clarke, S.L. procured those documents in order to prepare for litigation (DE # 272 at 9) (citing *Hunter's Ridge Golf Co. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 679 (M.D. Fla. 2006)).

      2.   <u>Analysis</u>

After this motion became ripe, Clarke, S.L. served a privilege log on Plaintiff (DE # 293).  Although neither party has provided the Court with a copy of Clarke, S.L.'s privilege log and the undersigned is not capable of evaluating these discovery objections without it, she does note the following general principles:

First, the documents requested are not irrelevant on their face.  A central issue in this case will be nature of the relationship between Clarke, S.L. and Clarke Brazil, and it seems to be that communications between those two entities (Request Nos. 44-46) may either be indicative of a close relationship in and of themselves, or at least reasonably calculated to lead to admissible evidence; similarly, the fact that Clarke, S.L. and Clarke Brazil may be paying for one another's legal expenses (Request No. 50) is seemingly relevant to the nature of the relationship between those entities, even if the payment of

---

Plaintiff, however, has not cited, and this Court has not found, any binding authority to that effect; and, because there are no questions squarely related to the attorney-client privilege presented in the motion at bar, it is not necessary to resolve this choice-of-law issue at the present juncture.

legal expenses does not alone establish an agency relationship.

Second, the work product privilege does not automatically attach to any document simply because it is sent to an attorney. Although Clarke, S.L. did not cite any cases in support of its position, *Hunter's Ridge Golf Co. v. Georgia-Pacific Corp.*, a case cited by Plaintiff, is instructive. 233 F.R.D. 678 (M.D. Fla. 2006). The relevant question before the Court on a motion to compel an opposing party to produce documents created by a third party is whether the "discovery requests are . . . geared at learning attorney thought processes." *Id.* at 682. The work product doctrine does not apply to every selection and compilation of documents generated by a third party, but rather only those requests that are shown to cause "a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents," a burden that "cannot be met through conclusory statements." *Id.* at 682-83 (internal quotation marks and citations omitted). Documents that Clarke Brazil may have created prior to litigation or generated independent of litigation do not become privileged because they were sent to Clarke, S.L.'s counsel to assist in the preparation of litigation and *vice versa* with regard to documents prepared by Clarke, S.L. and shared with counsel for Clarke Brazil. Those documents sent upon counsel's request are not themselves "communications" of the type shielded by the attorney-client privilege; and, the work product privilege is not applicable except in the *narrow* circumstances described above.

With these findings in mind, Clarke, S.L. shall deliver to Plaintiff a supplemental privilege log, and any remaining discovery disputes relating to privileged attorney-client communications or attorney work product may the subject of a revised motion to compel, after consultation between the parties pursuant to the Local Rules. S.D. Fla.

12

L.R. 7.1(A)(3).

IV.    **PLAINTIFF'S REQUESTS FOR PRODUCTION – CLARKE, INC.'s OBJECTIONS**

    A.    **Possession and Control**

        1.    **The Parties' Positions**

Clarke, Inc. argues that it does not "control," for discovery purposes, any documents that may be in the possession of its "autonomous and independent sister subsidiaries," including Clarke Brazil (DE # 264 at 5).  As described above, in the context of Clarke, S.L.'s opposition to Plaintiff's motion to compel, Clarke, Inc. claims that it has no legal authority to demand – and, thus, no "control" over – Clarke Brazil's documents in the absence of an "agency" relationship between the two entities (DE # 264 at 6).  Clarke, Inc. claims that it "does not control the daily operations" of Clarke Brazil; that it exercises no control over Clarke Brazil or its employees; that Clarke, Inc., unlike Clarke Brazil, does not engage in the practice of law (DE # 264 at 6-7).

In its reply brief, Plaintiff only discusses Clarke, Inc.'s control over documents within the possession of its corporate parent, Clarke, S.L.  Plaintiff, however, does not address Clarke, Inc.'s control over documents within the possession of its sister subsidiary, Clarke Brazil.  Plaintiff contends that Clarke, Inc. has the ability to obtain documents from Clarke, S.L. because Clarke, Inc. has no distinct corporate existence separate from Clarke, S.L.  To that end, Plaintiff points to the fact that Clarke Inc.: employs only two individuals who both report directly to Clarke S.L. and perform collection duties in furtherance of Clarke, S.L.'s corporate interests; that Clarke, Inc.'s representative refers to the two corporations as a single entity; and that the company's marketing and promotion materials – including its website, letterhead and identification at meetings and conventions – all describe Clarke Modet & Co. as a *single* company with

a presence in various countries (DE # 278 at 7-8).

      2.     <u>Analysis</u>

Though neither party addresses the matter in its briefs, it appears as though Plaintiff's motion to compel the production of documents from Clarke, Inc. is intentionally redundant to the motion to compel documents from Clarke, S.L. Considering the fact that this Order compels Clarke, S.L. to produce documents in the possession of Clarke Brazil, there does not seem to be any utility to require Clarke, Inc. to do the same.

In any event, Clarke, Inc. does not have the same legal authority as Clarke, S.L. to demand documents from Clarke Brazil.  As discussed previously, Clarke, S.L. "controls" materials in Clarke Brazil's possession because Clarke, S.L. owns Clarke Brazil.  For Clarke, Inc., a mere sister subsidiary of Clarke Brazil, to exercise control over documents in Clarke Brazil's possession, it would have prove the existence of additional indicia of control, based on factors such as (1) the corporate structure; (2) the connection of the entities to the transaction; and (3) and whether the entity resisting discovery would receive the benefit of a favorable outcome in litigation.  *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986).  Based on the current state of the record, it does not appear that Clarke, Inc. shares the kind of alter ego or agency relationship with Clarke Brazil that is necessary to conclude that Clarke, Inc. controls Clarke Brazil's corporate documents in the context of the instant discovery dispute.

    B.    <u>Attorney-Client and Work Product Privilege</u>

      1.     <u>The Parties' Positions</u>

Though the parties agree that federal law governs questions relating to the work-product privilege in the case at bar, they disagree as to the proper source of law to

resolve issues pertaining to the attorney-client privilege (DE # 264 at 7; DE # 278 at 4 n.1).  Clarke, Inc. asserts, pursuant to Federal Rule of Evidence 501, that because this is "a diversity case, federal courts apply state law to resolve claims of attorney-client privilege" (DE # 264 at 7).  Plaintiff, on the other hand, argues that "where both federal and state law claims are presented in the same action, federal courts are to apply federal privilege law" (DE # 278 at 4 n.1) (citing *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000)).  Since the disputed evidence is arguably relevant to Plaintiff's federal causes of action in addition to its claims arising under state law, Plaintiff asserts that federal privilege law determines the applicability of the attorney client privilege in the instant case.

Clarke, Inc.'s discussion of privileged material is vague, in that it does neither distinguishes between the different categories of documents that it seeks to shield from discovery nor clearly states the contours of its claims of attorney-client and work product privileges.  The only discovery requests that Clarke, Inc. specifically refers to in its response brief are Request Nos. 44-46 and 49, and it contends that each of those requests are undiscoverable pursuant to the work-product and joint defense doctrines (DE # 264 at 8).  Later in its response, however, Clarke, Inc. also discusses the attorney-client privilege and explains that the "joint-defense privilege can be said to have flowed from the attorney-client privilege," before concluding that the "requested documents are protected by both the attorney-client and work product privileges under Florida law" (DE # 264 at 9).  It is not at all clear whether Clarke, Inc. attempts to base its objections on the fact that (1) that some of the requested documents contain substantive attorney-client communications; or (2) that the act of sharing documents to prepare for litigation is an act that constitutes an attorney-client "communication" that is protected by the joint defense doctrine.

In any event, Plaintiff argues that any claim of attorney-client privilege is inapplicable to Clarke, Inc., because it is has maintained throughout the litigation that Clarke, Inc. and Clarke Brazil are independent legal entities, and thus either entity's disclosure of information to the other would constitute a waiver of that privilege (DE # 278 at 4).  Plaintiff also refutes Clarke, Inc.'s joint-defense argument, claiming that the doctrine only applies where there are multiple attorneys, and not, as here, where a single attorney represents two entities (DE # 278 at 4-5) (citing *In re Indiantown*, 270 B.R. 532 (S.D. Fla. 2001)).  Finally, Plaintiff asserts that the work product doctrine does not protect documents created by third parties (such as Clarke Brazil) simply because they are shared with a litigant (like Clarke, Inc.) who requests them in order to prepare for litigation (DE # 278 at 5).

      2.   <u>Analysis</u>

Clarke, Inc. delivered a privilege log to Plaintiff after this motion became ripe (DE # 293), but neither party has provided a copy to this Court.  The Court states the following general principles and encourages the parties to keep them in mind as they negotiate a resolution to their discovery disputes.

As noted above, Clarke, Inc.'s objection to Plaintiff's discovery requests is opaque, because it does not explain the basis of its claim of privilege.  On the one hand, Clarke, Inc. may be claiming that certain documents contain substantive attorney-client communications that are shielded from discovery.  On the other hand, Clarke, Inc. may be using the attorney-client privilege as a metaphor to describe how the joint defense doctrine extends the work product privilege to documents that it shared with Clarke Brazil in preparation for the instant litigation.

The Court does not credit Clarke, Inc.'s attempt to classify each exchange of

16

documents between Clarke, Inc. and Clarke Brazil as a "communication" for the purposes of analyzing its privilege claim.  It is not necessary to adopt Clarke, Inc.'s roundabout mode of analysis to complicate what is a simple request for documents created by a third party that were provided to a litigant in anticipation of litigation.  As discussed in more detail above, Clarke, Inc. must state with specificity how the production of a particular collection of documents shared between Clarke, inc. and Clarke Brazil would risk divulging the mental impressions or legal opinions of counsel in the instant litigation in order to support a claim of privilege based on the work product doctrine.  *See Hunter's Ridge*, 233 F.R.D. at 682.  If sharing documents among co-defendants automatically shielded all those underlying documents as attorney-client communications, then any defendant in a multi-defendant lawsuit could shield each and every relevant document from the plaintiff's discovery requests by the expedient method of simply shipping all of its documents to a co-defendant.

Of course, that is not to say that there are no documents in existence for which Clarke, Inc. might assert a legitimate objection based on the attorney-client privilege. For example, it is possible that Clarke, Inc.'s counsel may have drafted a summary of legal arguments to help a Clarke, Inc. corporate representative for deposition and that document may have been shared with Clarke Brazil.  Clarke, Inc.'s original copy of that letter would most likely be responsive to Plaintiff's Request No. 46, which seeks "[a]ll documents possessed, maintained or controlled by Clarke, Inc. . . . which refer to or relate to the instant lawsuit."  It seems clear that the letter is protected by the attorney-client privilege (and the work product doctrine), and it is equally clear that the joint defense doctrine operates to permit Clarke, Inc. to share the document with Clarke Brazil without destroying the existence of that privilege.  The quotation Plaintiff provided from

17

*In re Indiantown*, which states that the joint defense doctrine is inapplicable where "there is only one attorney sharing information with her multiple clients" is taken out of context and is of no moment here.  270 B.R. 532, 539 (S.D. Fla. 2001).  That case, which presented unusual facts, is distinguishable from the case at bar.  Most significantly, the *Indiantown* court found that there was no initial attorney-client communication, so it did not face the question of whether any confidences were preserved by the joint defense doctrine.

Thus, Clarke, Inc. is obligated to turn over responsive documents in its possession that it obtained from Clarke Brazil, except insofar as the documents contain substantive attorney-client communications or the mental impressions of counsel protected by the work product privilege.  Any legitimate attorney-client communication or protected work product that would otherwise be subject to the joint defense doctrine is not automatically discoverable simply because Clarke, Inc. and Clarke Brazil share the same counsel.

V.     **PLAINTIFF'S INTERROGATORIES**

A.     **Background**

Plaintiff filed a motion to compel Clarke, S.L. and Clarke, Inc. to provide better answers to a total of eleven of Plaintiff's interrogatories (DE # 267).  Clarke, S.L. and Clarke, Inc. filed a joint response to Plaintiff's motion to compel (DE # 289).  Plaintiff replied (DE # 301).[8]  The interrogatories in dispute are:

---

[8]     Almost all of the interrogatories at issue in Plaintiff's initial motion to compel pertained to discovery requests it served on Clarke, S.L.  The only interrogatory it directed to Clarke, Inc. (in addition to Clarke, S.L.) was interrogatory No. 13.  Since Plaintiff reported, in its reply, that Clarke, S.L. recently responded to that interrogatory, the issue is now moot and all the remaining interrogatory disputes pertain to Clarke, S.L. only (DE # 301 at 2 n.1 & 7).

- **Interrogatory No. 3, in which Plaintiff asks Clarke, S.L. to describe communications between Elisa Santucci and any of the Clarke Modet Entities regarding Platypus Wear's settlement of a Brazilian lawsuit involving Big Blue;**

- **Interrogatory Nos. 4 and 5, in which Plaintiff asks Clarke, S.L. to identify any communications between any of the Clarke Modet Entities and Horizonte and Big Blue, respectively;**

- **Interrogatory Nos. 7 and 8, in which Plaintiff asks Clarke, S.L. to identify any communications regarding any of the Clarke Modet Entities' representation of Horizonte or Big Blue, respectively;**

- **Interrogatory No. 12, in which Plaintiff asks Clarke, S.L. to identify all non-privileged documents pertaining to any fact alleged in any pleading;**

- **Interrogatory No. 14, in which Plaintiff asks Clarke, S.L. to describe the events that took place during a July 2003 meeting in Miami, Florida between, among others, Elisa Santucci and Laurens Offner;**

- **Interrogatory No. 15, in which Plaintiff asks Clarke, S.L.  to describe each and every reason that Elisa Santucci traveled to Miami, Florida in July 2003;**

- **Interrogatory No. 16, in which Plaintiff asks Clarke, S.L. to identify the date that each signatory signed the settlement agreement pertaining to the Brazilian litigation between Platypus Wear and Big Blue; and**

- **Interrogatory No. 17, in which Plaintiff asks Clarke, S.L. to identify all services that any of the Clarke Modet Entities rendered to Horizonte.**

Clarke, S.L. responded to each of these interrogatories by claiming that it lacked any knowledge necessary to answer them (DE # 267 at 3-5).[9]  The basis of its objection is that Plaintiff has not satisfactorily rebutted Defendants' assertions that Clarke, S.L., Clarke, Inc. and Clarke Brazil are three independent and autonomous corporate entities. According to Clarke, S.L., it is either unable – or simply not obligated – to obtain answers to Plaintiff's interrogatories from any other corporation.  It maintains that, short

---

[9]      As mentioned above, Defendants also objected to the fact that Plaintiff's use of the phrase "Clarke Modet Entities" improperly disregarded the legal separateness of Clarke, S.L., Clarke, Inc. and Clarke Brazil.

of proving that an agency relationship exists between Clarke, S.L. and Clarke Brazil, Plaintiff cannot force a parent corporation to furnish information held by a subsidiary corporation, and *vice versa* (DE # 289 at 7-9).

Plaintiff, on the other hand, insists that the Federal Rules of Civil Procedure require a parent corporation to "respond to an interrogatory with information from a subsidiary if it has access to that information and if the information is relevant and not privileged" (DE # 267 at 6).  As a basis for its claim that Clarke, S.L. can be classified as the parent of Clarke Brazil – for purposes of discovery, at least –, Plaintiff points out that both entities are represented by the same counsel; that Clarke, S.L. hired the Director General of Clarke Brazil, Antonio Trajano; that Clarke S.L. contacted Mr. Trajano for information after Plaintiff's complaint was filed; that Clarke, S.L. is covering the cost of litigation on behalf of Clarke Brazil; that Clarke, S.L. requires Clarke Brazil to submit monthly performance reviews; and that Clarke, S.L. and Clarke Brazil represent to be a single entity on their website and letterhead (DE # 301 at 3-6).

B.    Analysis

For the reasons discussed in the context of Plaintiff's motion to compel the production of documents, *supra*, Plaintiff's requests to compel interrogatory responses based on information in the possession of Clarke Brazil, its wholly owned subsidiary are **GRANTED**.

It is, therefore,

**ORDERED AND ADJUDGED** that:

a.    Plaintiff's Motion to Compel Production (DE # 249) is **GRANTED IN PART AND DENIED IN PART** as follows:

i.      On or before January 11, 2008, Defendants shall deliver to Plaintiff all documents within its control or possession, including those documents within the possession of its wholly-owned subsidiary, Clarke Brazil, which are responsive to Request Nos. 2-11, 40, 43, 52-53 and 56.

ii.     On or before January 11, 2008, Defendants shall deliver to Plaintiff all documents within its control or possession, including those documents within the possession of its wholly-owned subsidiary, Clarke Brazil, which are responsive to Request Nos. 12, 14-23 and 31, pursuant to this Court's Confidentiality Order and Stipulation (DE # 133), to the extent that it is applicable.

iii.    On or before January 11, 2008, Defendants shall file with this Court a privilege log that comports with Federal Rule of Civil Procedure 26(b)(5), and describes the materials withheld with sufficient particularity to allow the parties and the Court to assess the applicability of any relevant claims of privilege, including those made with respect to Request Nos. 44-46, 49-50 and 58-59.

b.      Plaintiff's Motion to Compel Interrogatory Responses (DE # 267) is **GRANTED**.  On or before January 11, 2008, Clarke, S.L. shall deliver to Plaintiff answers responsive to Interrogatory Nos. 3-5, 7-8, 12 and 14-17.

**DONE AND ORDERED** in Chambers in Miami, Florida on December 21, 2007.

*Andrea M. Simonton*

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable Federico A. Moreno, Chief United States District Judge
All counsel of record

21