UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-20976-CIV-MORENO/TORRES

PLATYPUS WEAR, INC., a California
corporation,

      Plaintiff,

v.

CLARKE MODET & CO., S.L., a foreign
corporation,

      Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Clarke Modet and Company, S.L.'s Motion for Summary Judgment ("Defendant's Motion") [D.E. 273]. The Court has reviewed the motion, the response, the reply, the pertinent portions of the record, and has considered the arguments of counsel at the status conference conducted June 20, 2008. Based upon this thorough review of the record we find that there are genuine issues of material fact that preclude summary judgment. Accordingly, for the reasons set forth below, Defendant's Motion is denied.[1]

---

[1] Pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida, this case was referred by Judge Moreno to the undersigned Magistrate Judge to take all necessary and proper action as required by law with respect to all pretrial matters. [D.E. 405]. This Order is, however, subject to *de novo* review and will be treated as a Report and Recommendation in the event either party timely files objections with the District Judge, as per section 636(b)(1)(B).

## I. BACKGROUND

Platypus Wear, Inc. ("Platypus") is a trademark licensing company that licenses its brands in countries around the world, including Brazil.[2] Clarke Modet is a professional firm comprised of several branch offices that provides various intellectual property services. Platypus alleges that Clarke, Modet and Company, S.L. ("Clarke Spain"), Clarke Modet & Co., Inc. ("Clarke USA"), and Elisa Santucci, ("Santucci"), a lawyer employed by the Brazilian entity of Clarke Modet ("Clarke Brazil"), conspired to fraudulently transfer trademarks depicting "bad boys" and "bad girls" from Platypus to two unnamed defendants, Horizonte and Big Blue. After more than two years of litigation, Clarke Spain is the last remaining defendant.[3]

In the Amended Complaint, Platypus asserts that Clarke Spain is liable for the following: legal malpractice, breach of fiduciary duty, fraud, conspiracy to defraud, RICO, and conspiracy to commit RICO. [D.E. 16 at ¶¶ 123, 128, 136, 139, 157, 163]. Platypus raises the identical claims against Santucci. There is no distinct claim for vicarious liability, but the Amended Complaint contends that Santucci "was and is an agent and/or employee and/or partner of Clarke [Spain]." [D.E. 16 at ¶ 5]. By framing the pleading in such a manner, Platypus is proceeding on a theory of *direct* liability against Clarke Spain, and also on a

---

[2] The record provides the basis for the summary of facts that are material to the issues presented, and to any findings that may be found in the analysis portion of this report and recommendation. A more detailed factual background is available in the Court's prior Motion to Dismiss Orders [D.E. 86, 100, 332].

[3] Elisa Santucci was dismissed on December 4, 2006 [D.E. 78]. Antonio Manuel Pereira Caldas Castro Henriques was voluntarily dismissed on February 21, 2007 [D.E. 98]. Fernando Maria Agostinho Periera Caldas, Jr., Roberto Silva Ramos and Frederico de Carvalho Marques D'Orey Menano were voluntarily dismissed on July 11, 2007 [D.E. 168]. Fernando Caldas Pereira Caldas, Sr. was dismissed on September 28, 2007 [D.E. 234]. The parties stipulated to the dismissal of Clark Modet & Co., Inc., or Clark USA, on April 3, 2008 [D.E. 404].

theory of *indirect* or vicarious liability stemming from the purported principal/agent relationship between Clarke Spain and Santucci. In its Answer, Clarke Spain denies these allegations and raises in no specific terms "lack of agency" as an affirmative defense. [D.E. 345 at 10].

Defendant's Motion raises four independent grounds for summary judgment: (1) the entire Amended Complaint fails as a matter of law because Santucci is not an agent, employee, or partner of Clark Spain; (2) the vicarious liability claim for legal malpractice is not recognized in Florida; (3) Clarke Spain is not vicariously liable under RICO; and (4) Platypus is not entitled to punitive damages pursuant to Florida law. Although Defendant's Motion attacks the claim of indirect liability vis-a-vis the alleged agency relationship between Clarke Spain and Santucci, it fails to address the claims of direct liability. We therefore treat Defendant's Motion as one for partial summary judgment with respect to the claim for principal/agent vicarious liability.[4]

Notably, some of the supporting exhibits contain excerpts of depositions, declarations, and affidavits. For ease of the reader, all citations to the record refer to the page number of a particular docket entry, not to the page number of the actual document (e.g. the page number of a particular deposition). Citations to the Amended Complaint will reference specific paragraphs. We now address Clarke Modet's arguments in turn.

---

[4] We recognize that the trial will likely focus on the purported agency relationship between Clarke Spain and Santucci; the evidence of record does not appear to support direct wrongdoing on the part of Clarke Spain. But the Amended Complaint nevertheless raises allegations of direct liability against Clarke Spain, so we cannot assume that Platypus has simply abandoned this theory of liability. From Clarke Modet's perspective, it may be a distinction without a difference, because evidence used to combat the claims of vicarious liability refutes the allegations of direct liability. By way of example, count four of the complaint is "conspiracy to defraud." Evidence that Clarke Spain was unaware of Santucci backdating documents supports a defense to the charges of vicarious liability (i.e. that Clarke Spain did not "control" Santucci) and also supports a direct liability defense (i.e. that Clarke Spain did not directly participate in the fraud).

## II. ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### A. *Agency Relationship Between Clarke Spain and Santucci*

"Ordinarily, the existence of an agency relationship is a question of fact to be resolved by the factfinder." *Gillet v. Watchtower Bible & Tract Soc. of Pennsylvania, Inc.*, 913 So. 2d 618, 620 (Fla. 3d DCA 2005) (quoting *Eberhardy v. General Motors Corp.*, 404 F. Supp. 826, 830 (M.D. Fla. 1975)). If a party bearing the burden of proof on an issue fails to produce any supportive evidence, or if the evidence presented by both parties is so unequivocal that reasonable persons could reach but one conclusion, then a question that is ordinarily one of fact becomes a question of law to be determined by the court. *Id.*

Defendant's Motion turns on the nature of the legal relationship between Clarke Spain and Santucci. To reiterate, the Amended Complaint contends that Santucci "was and is an agent and/or employee and/or partner of Clarke Modet." [D.E. at ¶ 5]. In its answer Clarke Spain denies this allegation, and raises "lack of agency" as an affirmative defense. [D.E. 345 at 10]. Neither the Amended Complaint, nor the Answer, specifically defines the relationship (or lack thereof) as one of "actual agency" or "apparent agency." We accordingly separate our discussion by addressing both theories of principal/agent liability.[5]

### *1.  Actual Agency*

To establish an actual agency relationship under Florida law, the plaintiff must show: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman,* 571 So. 2d 422, 242 n. 5 (Fla. 1990) (citing Restatement (Second) of Agency § 1 (1957)); *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1442-43 (S.D. Fla. 1995). When one considers an action based on actual agency, it is the right of control, rather than actual control, that may be determinative. *See Villazon v. Prudential Health Care Plan, Inc.*,

---

[5] Allegations in a complaint must be composed of definite statements with sufficient clarity and precision for a defendant to differentiate between the different claims in order to form a proper responsive pleading. *Anderson v. District Board of Trustees of Central Florida Community College,* 77 F.3d 364, 366 (11th Cir. 1996). For example, a plaintiff might raise direct and vicarious liability as alternative legal theories in separate counts under the same factual allegations. *See Douberley v. Burger King Corporation*, No. 08:06-cv-1844-T-17 EAJ, 2007 WL 1175757, at *1-2 (M.D. Fla. April 20, 2007) (direct liability and vicarious liability are distinct theories of liability) (citing *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1279-1280 (11th Cir. 2003))*; See also Island City Flying Service v. General Elec. Credit Corp.*, 585 So. 2d 274, 276 (Fla. 1991) ("Unlike a suit based on the doctrine of respondeat superior, this cause of action is grounded upon the negligence of the employer."). However, claimants need not allege agency in order to satisfy notice-pleading requirements. *See Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987) ("A person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact."); *Young v. 1st American Financial Services,* 977 F. Supp. 38, 41 (D.C.C. 1997) ("[V]icarious liability is not an independent cause of action, but rather is a legal concept used to transfer liability from an agent to a principal at trial.").

843 So. 2d 842, 853 (Fla. 2003) (citing *Nazworth v. Swire Fla., Inc.,* 486 So. 2d 637, 638 (Fla. 1st DCA 1986) ("[I]t is the *right* of control, not *actual* control, which determines the relationship between the parties.") (emphasis in original)).

Clarke Spain takes the position that Santucci is not its "agent," and that Platypus has not, and cannot, establish any of the requisite elements of an agency relationship. Clarke Spain argues that it had no authority or legal right to control Santucci's actions because she was solely an employee of the Brazilian entity of Clarke Modet. To that end, Clarke Spain relies on the declarations, affidavits, and deposition testimony of Isabel Gomez-Acebo (the internal legal adviser for Clarke Spain), Alberto Gonzales de Armas (the director and vice president of Clarke USA), and Isabel Triana (the business coordinator for Clarke USA), to establish that Clarke Spain is a parent corporation that has no operational control over its autonomous and independent subsidiaries and their employees; namely, Elisa Santucci. [D.E. 273 at 3-5].

The affidavit of Isabel Triana only speaks to the relationship between Clarke USA and Clarke Brazil, and is largely irrelevant. [D.E. 262-2]. Her deposition testimony actually cuts against Clarke Spain's position that it is detached from its subsidiaries. She testifies that Alejandro Klecker, the general director of Clarke Spain, interviewed her and hired her to work as the "business coordinator" in the Clarke USA office. [D.E. 262-6]. Triana's testimony offers no material insight as to the control that Clarke Spain may have had over Santucci.

The affidavit of Alberto Gonzalez de Armas likewise focuses on the relationship between Clarke USA and Clarke Spain and is of marginal relevance here. [D.E. 262-3]. In his deposition, he testifies that he works at Clarke USA, that his salary is determined by Alejandro Klecker of Clarke Spain, and that he provides yearly reports to Clarke Spain concerning his collection of accounts receivable [D.E. 262-7]. These facts reveal that Clarke

Spain has at least some control over employees at its subsidiaries. As further evidence that Clarke Spain is not an isolated corporate entity, Mr. Gonzalez de Arma discusses how Ms. Traina reports directly to the business development department of Clarke Spain [D.E. 262-8 at 6]. Still, his testimony speaks primarily to the relationship between Clarke Spain and Clarke USA, not to Clarke Spain's control of Santucci.

Perhaps the only meaningful evidence in support of Defendant's Motion comes from Isabel Gomez-Acebo, who states in her declaration: " Elisa Santucci is not, nor has she ever been, an employee of [Clarke Spain]. [Clarke Spain] exercises no control over the actions of Elisa Santucci as an attorney in her representations of intellectual property clients in Brazil. Elisa Santucci has never received an annual salary or any compensation from [Clarke Spain]." [D.E. 262-9 at 2]. Ms. Gomez-Acebo acknowledges that Clarke Spain has some control over Clarke Brazil, as the board of directors of Clarke Spain has the power to hire and fire the "director general" of Clarke Brazil. [D.E. 262-4 at 12-13; D.E. 262-5 at 3].

In response, Platypus relies primarily on the Clarke Modet corporate guidelines, the "Normas de Gestion y Buen Gobierno de las Empresas del Grupo" ("Standards"), to show that Clarke Spain: (i) requires Clarke Brazil and its employees to conform to a "strict code of ethics"; (ii) requires Clarke Brazil to sign confidentiality and non-competition agreements; (iii) requires Clarke Brazil to obtain civil liability insurance; (iv) has the sold discretion to hire and fire the head of Clarke Brazil; (v) hires, fires and supervises employees at other offices; (vi) requires Clarke Brazil to report monthly to Clarke Spain; and (vii) supervises Clarke Brazil's budget. [D.E. 393 at 11]. The Standards also mandate that "[a]ll personnel of [Clarke Modet] shall have a sample of the standards and sign them," demonstrating that Clarke Spain had at least a modicum of control over Clarke Brazil and Santucci. As further evidence that

Clarke Spain and its various subsidiaries operate as one entity, Platypus points to an email wherein Santucci sought assistance from Clarke Modet's Chilean affiliate. [D.E. 428-2].

On this record, we cannot conclusively find as a matter of law that there is no actual agency relationship between Clarke Spain and Santucci. At best, the testimony of Ms. Gomez-Acebo distances Clarke Spain from the purported trademark theft. But it does not sufficiently disprove a principal/agent relationship between Clarke Spain and Santucci. Defendant's Motion does not reference testimony from Santucci, let alone any other Clarke Brazil employee, to corroborate Clarke Spain's argument that it has no authority over Clarke Brazil or Santucci. At oral argument, defense counsel repeatedly stressed that Clarke Spain had nothing to do with the actions of a Brazilian lawyer, employed by a Brazilian law firm, that supposedly conspired with Brazilian third parties to fraudulently transfer a trademark for use in Brazil. Tellingly, Clarke Spain did not submit a statement from anyone at the other end of the alleged principal/agent relationship.

Admittedly, on one level, the absence of any material evidence from Clarke Brazil perhaps shows that Clarke Spain has no control over Santucci. At the same time, however, it evidences a mistaken belief that the self-serving affidavit from Clarke Spain's in-house counsel, Ms. Gomez-Acebo, would be sufficient to adjudicate an agency relationship. Frankly, even Ms. Gomez-Acebo's statement is lacking. She talks primarily about *actual* control, but fails to testify about Clarke Spain's authority or *right* to control Santucci.

Moreover, the corporate structure of Clarke Modet is unclear in this record, and Defendant's Motion does not reference incorporation documents wherein Clarke Spain relinquishes control over Clarke Brazil or Santucci. The financial relationship between Clarke Spain and Clarke Brazil, to the extent there is one, is likewise insufficiently developed.

Without more, Defendant has not met its initial burden to show the absence of genuine issues of material fact with respect to Clarke Modet's control of Santucci.

Assuming *arguendo* Clarke Modet has met its burden under Rule 56, we find that Platypus has set forth specific facts showing that there is a genuine for trial. Though the evidence is largely circumstantial, it is clear that Clarke Spain exhibits at least some control over its subsidiaries and their respective employees, and certainly enough control for a jury to find that Clarke Spain controlled its employees at Clarke Brazil enough to render it liable for their malfeasance. In sum, there is a disputed issue of material fact as to the degree of control by the principal over the actions of the agent. Accordingly, the existence of an agency relationship is a question of fact that needs to be resolved by a jury. *See Gillet*, 913 So. 2d at 620.

### 2. *Apparent Agency*

Clarke Spain is equally liable for Santucci's misconduct if Platypus is able to establish actual *or* apparent agency. To establish apparent agency, the plaintiff must show: "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Fernandez v. Florida Nat'l College, Inc.*, 925 So. 2d 1096, 1101 (Fla. 3d DCA 2006) (quoting *Roessler v. Novak*, 858 So. 2d 1158, 1161 (Fla. 2d DCA 2003). To its detriment, Clarke Spain fails to present any evidence or argument to demonstrate the absence of a genuine issue of fact on the issue of apparent agency. Therefore, even if we were to grant Defendant's Motion in full, Platypus would still be allowed to proceed on an apparent agency theory – a theory that may ultimately have more merit than liability for actual agency.

For the first time in its Reply, however, Clarke Spain suggests that Platypus "waived its claims of apparent agency" by failing to plead apparent agency in the Amended Complaint.

[D.E. 407 at 4]. The only case cited by Clarke Spain is *Fernandez v. Florida National College, Inc.,* 925 So. 2d 1096, 1101 (Fla. 3d DCA 2006), where the court found that the failure to plead a claim of apparent agency resulted in a waiver in *state* court. Clarke Spain provides no authority for the contention that the failure to plead apparent agency in *federal* court results in a waiver. Indeed, our research contradicts that position. *See, e.g., Greenberg v. Sala*, 822 F.2d at 886 (plaintiff not required to detail allegations of agency in a federal complaint containing federal RICO claims and state law claims of fraud, breach of fiduciary duty, and malpractice); *Young v. 1st American Financial Services,* 977 F. Supp. at 41 ("[V]icarious liability is not an independent cause of action ... but plaintiffs may advance the vicarious liability of [defendant] at trial.").

There is indeed no indication that Platypus intended to limit its agency claim to that of actual agency, and not pursue a claim of apparent agency. The Amended Complaint states generally that "Santucci was and is an agent" of Clarke Spain [D.E. 16 at ¶ 5]. We point out that Clarke Spain answered this allegation with a general denial, and then raised the following affirmative defense: "Plaintiff cannot allege nor sustain any cause of action against [Clarke Spain] . . . because Ms. Santucci . . . is not its agent, employee or partner." [D.E. 345 at 10]. If the Amended Complaint was vague on issue of actual versus apparent agency—and we do not believe that it was—the onus fell on Clarke Spain to move for more definite statement under Fed. R. Civ. P. 12(e). Clarke Spain failed to do so.

Finally, there is no question that Clarke Spain failed to move for summary judgment on this issue; it raised "waiver" as an tangential argument in its reply. Thus on that procedural basis as well there is ample ground to reject that argument under the settled rule that federal courts do not consider arguments advanced for the first time in a reply brief or memorandum. *See, e.g., United States v. Levy,* 379 F.3d 1241, 1244 (11th Cir. 2004).

### B.   *Vicarious Liability for Legal Malpractice*

Clarke Spain argues that Florida law does not recognize a claim for legal malpractice by a non-Florida plaintiff against a non-Florida attorney. [D.E. 273 at 10]. Clarke Spain cites two Florida state court cases. The first case, *Bacardi v. De Lindzon*, 728 So. 2d 209 (Fla. 3d DCA 1999), applies Florida *forum non conveniens* law to decide that a foreign country is the best place to determine a legal malpractice claim against a foreign attorney practicing foreign law. In the second case, *Harris v. Shuttleworth and Ingersoll, P.C.*, 831 So. 2d 706 (Fla. 4th DCA 2002), the court upheld the lower court's dismissal of a non-resident defendant law firm for lack of personal jurisdiction. These cases do not, however, address the substantive viability of a legal malpractice claim against a non-resident attorney. Clarke Spain does not cite to authority that states a legal malpractice claim falling under foreign law is not cognizable at all in Florida.

Clarke Spain nevertheless suggests that the malpractice claim should be adjudicated pursuant to Brazilian law. This trademark dispute stems from the alleged legal malpractice of a Brazilian attorney representing a California corporation with intellectual property interests in Brazil. We acknowledge that Brazilian law, or perhaps even California law, could apply to the legal malpractice claim.[6] However, the application of Brazilian malpractice law would not divest the Court of jurisdiction. In any event, Clarke Spain failed to argue this

---

[6]   A federal district court sitting in diversity applies the choice-of-law rules in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Because Florida is the forum state, its choice-of-law rules control. *Id.* Florida resolves conflict-of-laws questions according to the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233 (11th Cir. 2007) (citing *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1101 (Fla. 1980). A review of several non-dispositive factors, e.g. the needs of international systems, the protection of justified expectations, or ease in the determination and application of the law to be applied, fails to elucidate a clear-cut rule of law that this Court should apply.

point to any meaningful degree, and failed to provide a choice-of-law analysis, so the request to apply Brazilian law to the malpractice claim must be denied at this stage.[7]  And Clarke Spain has not purported to argue that as a substantive matter the facts in this case could not give rise to a legal malpractice claim as a matter of law.  Therefore, on this record there is no basis to grant the summary judgment motion on this claim.

### C.  *Vicarious Liability Under RICO*

Clarke Spain next argues that it should not be subject to vicarious liability under RICO, but its argument is primarily premised on Platypus' purported problem of pleading "pattern" or "continuity."  Continuity is both a closed-ended and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *United States v. Browne*, 505 F.3d 1229, 1259 (11th Cir. 2007); *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed.2d 195 (1989) (holding that the Government must prove not only that at least two predicate acts were committed, but also that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity) (internal quotations omitted).

Clarke Spain argues that Platypus did not sufficiently plead with specificity the continuity requirement of the RICO claim.  [D.E. 273 at 12-14].  Clarke Spain attempts to define the racketeering activity as "a single meeting in Miami, Florida on July 12 or 13, 2003"

---

[7]   We note here as well that the issues involved in the legal malpractice claim may not actually involve a conflict of laws question at all.  It may be that Brazil and California law do not materially differ from Florida law on the elements required for a legal malpractice claim.  In that case, this may present a case involving a "false conflict" and not one where a true conflict of laws analysis must be undertaken.  *See, e.g., Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352-53 (Fla. 2d DCA 2000) (explaining three different circumstances that can give rise to false conflicts under Florida law).  Thus ultimately the trial judge may decide to simply apply Florida law principles in resolving the legal malpractice claim.  Again, however, these issues have not been adequately addressed in this summary judgment motion and thus we leave the matter unanswered for now.

at which certain trademark applications were fraudulently transferred from Platypus to third parties. [D.E. 273 at 14]. Platypus, to the contrary, contends that the pattern of racketeering began no later than October 2002 and continues through the present. [D.E. 16 at ¶ 157; D.E. 393 at 19].

To the extent the pleadings are vague and fail to distinguish between "closed-ended" and "open-ended" continuity, or generally fail to sufficiently allege a violation of the RICO statute, the proper avenue to resolve this deficiency is not Fed. R. Civ. P. 56. Instead, Clarke Spain should have moved for more definite statement under Rule 12(e) or moved to dismiss under Rule 12(b)(6). In fact, Clarke Spain already filed a motion to dismiss the Amended Complaint for failure to state a cause of action, and that motion was denied based in part upon Platypus's more specific RICO case statement. [D.E. 332]. We thus again decline to strike the vicarious liability claim under RICO because of alleged pleading deficiencies, especially as we construe the Complaint to adequately raise a RICO claim.

Moreover, we find there are questions of fact pertaining to the RICO claim that would preclude summary judgment under Rule 56. Acts that are part of the same scheme or transaction can qualify as distinct predicate acts as long as "each act constitutes a separate violation of the state or federal statute governing the conduct in question." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1397 (11th Cir. 1994) (quoting *United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir. 1985) (internal quotations omitted)). That which Clarke Modet argues is a single episode of fraud could be viewed by a jury as a scheme consisting of multiple violations, sufficiently interrelated and continuous to constitute a pattern of racketeering activity. *See, e.g., United States v. Boffa*, 688 F.2d 919, 935-36 (3d Cir. 1982) (holding that a reasonable jury could find that each monthly lease payment made to secure use of an automobile for a union official for four months constituted a separate

predicate act under RICO); *United States v. To*, 144 F.3d 737, 747 (11th Cir. 1998) (affirming RICO substantive and conspiracy convictions where the evidence was sufficient to show that the defendant committed three predicate acts, all within a span of several hours). The jury could easily determine from the proffered evidence that Laurens Offner (the ex-president of Platypus), Clarke Spain, Clarke Modet subsidiaries, Horizonte, and Big Blue cooperated to consummate an alleged conspiracy to fraudulently transfer Platypus' trademark rights, and that each successive licensing payment under these alleged agreements constituted a distinct predicate act.[8]

Clarke Spain's argument also falls short because the "statement of undisputed facts" in Defendant's Motion does not address the merits of the RICO claim. It is not fatal that Clarke Spain failed to attach corroborating evidence to support its RICO argument, because Rule 56 allows parties to file motions for judgment as a matter of law "with or without supporting affidavits." Fed. R. Civ. P. 56(a). Rather, Clarke Spain's argument fails because the "statement of undisputed facts" focuses solely on the issue of agency. For example, had Clarke Modet alleged that the trademark rights were returned to Platypus, we might have a basis to dismiss the "open-ended continuity" claim. Or, had Clarke Spain proffered that Laurens Offner only received a one-time payment pursuant to the terms of the trademark transfer, this would perhaps bolster Clarke Modet's position that this case is a single act of

---

[8] We also now know from the Eleventh Circuit that the RICO statute can apply extraterritorially. "RICO may apply extraterritorially if conduct material to the completion of the racketeering occurs in the United States, or if significant effects of the racketeering are felt here." *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, ___ F.3d ___, 2008 WL 2446320, at *7-8 (11th Cir. June 19, 2008) (resolving issue of first impression in this Circuit and following majority rule). That decision affirmed a RICO judgment from the Southern District of Florida that was based on a foreign national's fraud and RICO claim against a local defendant for actions for a conspiracy that was furthered in part in Florida. The evidence in this case could even provide a stronger showing for application of the RICO statute where a United States plaintiff sues a foreign national entity for a fraud that was consummated in the United States, causing injury in part within the United States.

fraud, and not an ongoing conspiracy or RICO claim. But Clarke Spain did not raise the allegations in the statement of undisputed facts, so there was nothing for Platypus to rebut.

Next, Clarke Spain argues that "[Platypus'] efforts to impute vicarious liability on [Clarke Spain] under the RICO statute based on the purported acts of Elisa Santucci, a Brazilian attorney who is neither its agent, employee or partner, fails as a matter of law." [D.E. 273 at 15]. This issue has been sufficiently addressed above, and we reiterate that there are genuine issues of material fact as to whether Elisa Santucci was Clarke Spain's actual or apparent agent sufficient to hold it liable for her role in the conspiracy and fraud alleged in the Amended Complaint.

Finally, Clarke Spain insists that it has not derived any benefit from the alleged RICO violation, and suggests that imposing vicarious liability would not serve to further Congress's intent to eliminate the infiltration of legitimate businesses by organized crime. [D.E. 273 at 17]. Clarke Spain, however, has not provided the Court with any tangible evidence or argument with which to find that Congress did not intend for the RICO statute to apply to a case such as this. Moreover, we know that one of the principal purposes of the RICO statute was to provide a racketeering remedy when evidence shows that a fraudulent conspiracy was consummated in the United States. *Liquidation Comm'n,* 2008 WL 2446320 at *8 ("We have no doubt that under these circumstances, Congress would intend [plaintiff] to have recourse to American courts and remedies.").

Clarke Spain's motion for summary judgment on the RICO claim must thus be denied as the Court cannot find that Clarke Spain is entitled to judgment as a matter of law on this claim.

### D.     *Entitlement to Punitive Damages Under Florida Law*

Plaintiff seeks to recover punitive damages. [D.E. 16 at 25]. Defendant's Motion contests the entitlement to punitive damages and argues (1) that Platypus did not establish the requisite elements of an agency relationship between Clark Spain and Santucci; and (2) that Platypus failed to allege or procure any facts showing a triable issue on the supposed willful and wanton misconduct of Clark Spain. Specifically, Defendant relies on *Mercury Motors Exp., Inc. v. Smith,* 393 So. 2d 545 (Fla. 1981) to argue that "an employer can only be liable for punitive damages if it is established that its own willful and wanton misconduct, along with the wrongful acts of one of its employees, caused substantial harm to a third party." [D.E. 273 at 19]. We reject this position for several reasons.

In the Amended Complaint, Platypus alleges that Clarke Spain is *directly* liable for the fraudulent transfer of trademark rights. [D.E. 16 at ¶¶ 123, 128, 136, 139, 157, 163]. In Florida, a defendant may be liable for punitive damages if the trier of fact finds that the defendant was personally guilty of intentional misconduct or gross negligence. Fla. Stat. § 768.72(2). The parties did not brief the issue of Platypus' entitlement to punitive damages under section 768.72(2). Absent argument to the contrary, the punitive damage claim under section 768.72(2) remains, for now, unchallenged.

The more complicated question is whether Clarke Spain is subject to punitive damages for the acts of Santucci. Section 768.72(3) squarely addresses the legal standards we use to assess punitive damages claims with respect to an employer or a corporation:

> In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:
> (a) The employer, principal, corporation or other legal entity actively and knowingly participated in such conduct;

> (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
>
> (c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

Fla. Stat. § 768.72(3); *see also Mercury Motors*, 393 So. 2d at 549 ("Although the misconduct of the employee . . . must be willful and wanton, it is not necessary that the fault of the employer, independent of his employee's conduct, also be willful and wanton."). Clarke Modet's contention—that a plaintiff must establish willful and wanton conduct on the part of the employer—flies in the face of the plain language of the statute and settled Florida law.

It is instead clear that a plaintiff must prove "some fault on the part of the employer which foreseeably contributed to the plaintiff's injury to make him vicariously liable for punitive damages." *Mercury Motors*, 393 So. 2d at 549. Section 768.28(3) (codified in 1986 after the *Mercury Motors* decision) clarifies "some fault" as knowing participation, consent, or active involvement with respect to conduct that constitutes gross negligence. Clarke Spain's admission that it did not take steps to ensure that Santucci abided by its corporate standards at a minimum establishes a triable issue of fact as to Clarke Spain's vicarious liability for punitive damages under section 768(3)(b). Therefore, we also reject Clarke Spain's motion to dispose on summary judgment with Platypus's claim for entitlement to punitive damages.

### III.  CONCLUSION

Based upon a thorough review of the record as a whole, Clarke Modet and Company, S.L.'s Motion for Summary Judgment [D.E. 273] is **DENIED**.

For administrative purposes, the undersigned has disposed of the pending motion by Order as no dispositive relief is being recommended. Pursuant to 28 U.S.C. § 636 and S.D. Fla. Local Mag. R. 4(b), the parties have *five* days from the date of this non-dispositive Order to serve and file written objections, if any, with the Honorable Federico A. Moreno, United

States District Judge.  Any response to such objections shall also be filed in five days.  The Court finds good cause to modify the objection period, as provided in S.D. Fla. Local Mag.J. R. 4, based upon the imminent trial date.  Moreover, the entry of this Order shall *not* preclude either party from obtaining *de novo* review of the Order.  In the event any objections are filed the Order will be treated as only a Report and Recommendation.  On the other hand, as there are no factual findings being made in this Order, the failure to file objections shall *not* bar the parties from seeking a *de novo* determination at a later stage of the case by the District Judge or on appeal of any issue covered in this Order.

      **DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of June, 2008.

                                            _____
                                            EDWIN G. TORRES
                                            United States Magistrate Judge

cc:      Hon. Federico A. Moreno
           Counsel of Record